REGENTS OF the UNIVERSITY OF MINNESOTA et al., Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.

No. 4–76–Civ–468.

United States District Court, D. Minnesota, Fourth Division.

Dec. 2, 1976.

Joe A. Walters, Thomas A. Keller, III, Minneapolis, Minn., for plaintiff.

Wright W. Brooks, Minneapolis, Minn., for defendant.

Joseph M. Goldberg, Minneapolis, Minn., David C. Forsberg and Peter W. Sipkins, St. Paul, Minn., amicus curiae.

## MEMORANDUM & ORDER GRANTING TEMPORARY INJUNCTION

DEVITT, Chief Judge.

University of Minnesota and some of its Regents, officers and faculty members (Minnesota), aggrieved by the action of the National Collegiate Athletic Association (NCAA) in placing its athletic teams on indefinite probation for refusal to find three student athletes ineligible, seeks injunctive and declaratory relief from the sanction, claiming impingement upon its constitutional rights.

■ Federal question jurisdiction is proper and state action is involved because of the pervasive influence exercised on NCAA affairs by its numerous state-supported university members. 28 U.S.C. § 1343(3), 42 U.S.C. § 1983. *See Howard University v. NCAA*, 166 U.S.App.D.C. 260, 510 F.2d 213 (1975) and cases there cited.

Upon the allegation that three of Minnesota's basketball players, Philip Saunders, Michael Thompson and David Winey violated certain NCAA eligibility rules, Minnesota afforded them due process hearings resulting in a finding by the Campus Committee on Student Behaviors (CCSB) and the Assembly Committee on Intercollegiate Athletics (ACIA), that the three did not violate the rules and should not be declared ineligible. Minnesota refused to declare them ineligible.

NCAA takes the position that it is within its exclusive authority to determine eligibility of student athletes. It viewed the three as ineligible and when Minnesota refused to so find them, NCAA placed all Minnesota athletic teams on probation. This suspension works undisputed hardships on Minnesota. Alleging irreparable injury, Minnesota seeks a temporary injunction restraining NCAA from imposing the suspension and declaring NCAA enforcement procedure void as against Minnesota.

There is no dispute as to the facts which are presented by the pleadings, affidavits and copies of reports and correspondence. Argument was heard November 29, 1976.

In summary, the University of Minnesota is one of more than 800 educational institutions, public and private, which are members of NCAA, an unincorporated voluntary association, which regulates the athletic activities of its member institutions, primarily in the interest of maintaining amateurism.

NCAA has a monopoly over major intercollegiate athletic programs in the United States. Virtually all colleges and universities with major intercollegiate athletic programs are members. NCAA negotiates exclusive television contracts with television networks for broadcasts of intercollegiate athletic contests and excludes non-members and members on probation from appearing on such telecasts. NCAA controls major post-season bowl games in football and national championship events in other sports and can exclude NCAA member institutions on probation from such events.

In July 1975 NCAA advised Minnesota of some 98 infractions of NCAA legislation by Minnesota basketball players and coach. Minnesota investigated the charges, found them to be true, and did not object to the penalties imposed upon its basketball team by NCAA.

One of the infractions alleged in NCAA confidential report # 111 was that student basketball players Saunders, Thompson and Winey had violated NCAA rules and that this required Minnesota to declare them ineligible. Each of these students receives a board, room and tuition athletic scholarship from the University of Minnesota. Responsive to the requirements of the Student Conduct Code (and in Thompson's case, in obedience to a Minnesota state court order) and in accordance with authority granted by NCAA, Minnesota afforded the players a hearing before the CCSB and ACIA. These committees found that the conduct of the players did not violate the eligibility rules and voted not to declare them ineligible.

The diverse findings of the NCAA and the Minnesota committees created an impasse. Correspondence followed between University of Minnesota President Magrath and NCAA officials, but no accord was reached. Minnesota asked the NCAA Committee on Infractions for a "new evidence" hearing. It was granted. NCAA persisted in its position that Minnesota must declare the players ineligible and as a sanction for refusing to have immediately declared the players ineligible, it placed the entire Minnesota athletic program on indefinite probation. Minnesota appealed to the NCAA council, the principal governing agency of NCAA which supported the Committee on Infractions.

This lawsuit followed.

The issue here is not one of absence of due process—each of the student athletes received a full and fair hearing and they had no complaint—but the issue is whether Minnesota's President Magrath was right in the choice he made between forces impelling him in opposite directions. If he followed the findings of the hearing committees, he could not declare the athletes ineligible, but that would be to ignore the findings of the NCAA's Infraction Committee and Minnesota's obligation as an NCAA member and thus incur sanctions of the serious kind later imposed. If he followed NCAA's direction, he would be ignoring the findings of the hearing committees, hearings required by law and authorized by NCAA, to the prejudice of the student athletes.

It is without question that the University has a contractual obligation to the NCAA which it must honor absent a superior legal duty to the contrary. The University contends that it does have a superior legal duty which, in this particular case, prevents it from fulfilling its duty to the NCAA. That superior legal duty is its constitutional obligation to afford its students the rights guaranteed to them by the Fourteenth Amendment's due process clause. If the University is correct, no one would argue that a constitutionally imposed duty does not take precedence over one imposed by contract.

Critical to the determination of whether the University has such a constitutionally imposed duty is whether the opportunity to play intercollegiate basketball for the University of Minnesota is a property right

which invokes the due process protection of the Fourteenth Amendment.

■ Although the Federal Constitution prohibits a state from depriving any person of property without due process of law, it is to state law to which the federal courts must usually turn for the definition of protected property interests. *Goss v. Lopez*, 419 U.S. 565, 572, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs contend that *Thompson v. Barnes*, 294 Minn. 528, 200 N.W.2d 921 (1972) establishes that the opportunity to participate in intercollegiate athletics is a property right substantial enough to warrant due process protection. In *Thompson*, plaintiff, a high school athlete, was suspended by the Minnesota State High School League for one year from all interscholastic activities because he violated the League's alcohol rule. The district court denied plaintiff relief and granted defendants' motion for summary judgment. The Supreme Court, treating plaintiff's appeal as one from an order denying a temporary injunction, affirmed the district court decision that plaintiff had not established that the trial court abused its discretion. In footnote 11 to that opinion, the court indicated that "participation in interscholastic activities . . . is today recognized . . . as an important and integral facet of the youth's education [sic] process . . . ." *Id.* at 535, n. 11, 200 N.W.2d at 926.

■ Thus *Thompson* does not establish participation in intercollegiate athletics as a property right. In the absence of a state decision holding that this interest is in fact an interest which must be protected by the due process clause, the court must, of course, adopt the rule which it believes the Minnesota Supreme Court would adopt were it faced with this question. 1 W. Barron and A. Holtzoff (Wright ed.) *Federal Practice and Procedure* § 8. Because participation in the basketball program at the University of Minnesota may lead to a career in professional basketball and because this participation is an important part of the student-athletes' education, the court

is satisfied that if the Minnesota Supreme Court were presented with this issue it would conclude that the interest in question is a substantial property right.

. In *Behagen v. Intercollegiate Conference of Faculty Rep.*, 346 F.Supp. 602 (D.Minn. 1972), Judge Larson held that before certain University of Minnesota basketball players could be suspended from the team, they must be afforded due process of law. In reaching that decision, he concluded that the "opportunity to participate in intercollegiate athletics is of substantial economic value to many students" and was therefore a property right within the meaning of the due process clause of the Fourteenth Amendment. *Id.* at 604. Judge Larson noted that because big time collegiate basketball is the principal avenue to professional basketball and its attendant "multimillion dollar contracts," the "chance to display . . . athletic prowess in college stadiums and arenas throughout the country is worth more in economic terms than the chance to get a college education." *Id.*

The court is convinced that, on this rationale alone, the Minnesota Supreme Court would conclude that this interest is a substantial property interest and would thus merit the protections of the due process clause. In addition, however, the court notes that, in its opinion, the opportunity to participate in an athletic program is a very important part of each student-athlete's education. The concepts of winning, losing and doing your best, while made somewhat trite by modern media, are nonetheless important to everyone's development. In the athletic experience, all these concepts are intensely focused into brief periods of competition either with oneself or another. Because an "education is such a necessary ingredient of economic success in later life," *id.*, a student must be afforded due process rights before the right to it, or any substantial element of it, can be adversely affected.

In summary, the opportunity to participate in intercollegiate basketball at the University of Minnesota is a property right entitled to due process guarantees because it may, albeit only in exceptional circum-

stances, lead to a very remunerative career in professional basketball, and, because in all cases, it is an important part of the student-athlete's educational experience.

■ Minnesota was therefore required by law to afford the athletes a hearing before passing on their eligibility.[1] It was also directed by Judge A. Paul Lommen and authorized by NCAA to do so and it did. Minnesota and NCAA are bound by the findings. Minnesota properly could not later disavow the findings made by its committees in order to comply with its NCAA membership obligation to abide by NCAA rules and decisions. That would be to make a mockery of due process.

When NCAA imposed indefinite probation on Minnesota's athletic teams because of Minnesota's refusal to declare Saunders, Thompson and Winey ineligible, it transgressed upon Minnesota's legal duty to afford due process hearings to the athletes and to abide by the results; the law recognizes that Minnesota has a federal right to be free from interference in the performance of this duty. *Brewer v. Hoxie School District No. 46*, 238 F.2d 91 (8th Cir. 1956).

NCAA relies on Chief Judge Fox's decision in *Hunt v. National Collegiate Athletic Association, supra*, n. 1, in support of its position, but it is inapposite. That case was by student-athletes against the University of Michigan and NCAA, and the issue was whether the student-athletes had received due process by proxy through their university in NCAA proceedings. On the facts peculiar to that case, the court held they had received due process because of the unity of interest in the positions of the university and students and because of the university's vigorous and conscientious pressing of the students' claims. Here Minnesota represented primarily its own interests, and only incidentally that of the students, in NCAA proceedings. But more importantly, this action is by the University against NCAA, to which the students are not a party, and there is no question that the students received their required due process hearings from the University of Minnesota, and the issue here is the recognition which that hearing must receive from NCAA.

NCAA makes the argument, not without some logic, that to permit its member colleges and universities to make the decision as to eligibility of its own student athletes would frustrate its duty of requiring uniform and impartial application of the rules, and result in as many interpretations as there are member institutions. I am satisfied that the Minnesota Campus Committees conducted fair and impartial hearings and reached fully justifiable conclusions in this case, but even if there is some basis for the NCAA's fear of "Home Town" decisions by local institutional hearings, then the remedy well may be to amend its rules and procedures to provide for prior due process hearings by independent hearing officers or boards. But, at all events, the fact that the conclusion reached here may necessitate changes in NCAA's plan of operation does not diminish the legal necessity of providing due process hearings to student-athletes precedent to determining their eligibility.

It apparently has not been fully appreciated by the NCAA that its member institutions have a dual obligation to the NCAA *and* to the students. Its present enforcement procedures make only passing reference to institutional hearings. *See Policy 13* of the NCAA which concludes "This hearing opportunity . . . should satisfy due process procedures *if any be required*." (Emphasis added.)

At its January 1975 annual convention in Washington, D. C., the NCAA was afforded the opportunity to amend its procedures to specifically provide for institutional hearings *before* a finding of ineligibility. Presi-

---

1. This was also the holding of the district courts in *McDonald v. National Collegiate Athletic Association*, 370 F.Supp. 625, 627 (C.D. Cal.1974) and *Hunt v. National Collegiate Athletic Association*, No. G–76–370 CA (W.D.Mich. Sept. 10, 1976). The Tenth Circuit has held that participation in high school athletics is not a property right to be accorded due process protection under New Mexico law. *Albach v. Odle*, 531 F.2d 983 (10th Cir. 1976).

dent Horn of California State University at Long Beach offered a proposal (# 68) to provide a 30 day period "prior to the axe falling" for the holding of an institutional hearing. President Horn said "the student athletes, just as any other human being in our Anglo-Saxon judicial oriented society, would have to receive notice and have an opportunity for a hearing with respect to his ineligibility." (Ex. NN to defendant's brief.)

The proposal was not adopted. Had it or some similar provision been included in the NCAA enforcement procedure so as to make crystal clear the hearing rights of student athletes and the respect such hearings must be accorded by NCAA, this unfortunate confrontation between the University of Minnesota and the NCAA might have been avoided.

The court finds that plaintiffs have shown a strong probability of success on the merits and that Minnesota would be irreparably harmed if a preliminary injunction is not issued and that NCAA would not be harmed if it is issued. NCAA is directed to lift the probation imposed on the University of Minnesota 'teams and is temporarily enjoined from imposing further sanctions until a hearing on the merits.

Bond is set at $1,000.00.

These expressions shall constitute the court's findings of fact and conclusions of law.