Farley I. WEISS

v.

The EASTERN COLLEGE ATHLETIC
CONFERENCE and The National
Collegiate Athletic Association.

Civ. A. No. 83–1576.

United States District Court,
E.D. Pennsylvania.

May 4, 1983.

Jerome J. Shestack, Philadelphia, Pa.,
Andrew S. Gordon, Phoenix, Ariz., Harry
M. Weiss, Scottsdale, Ariz., for plaintiff.

David P. Bruton, Philadelphia, Pa., Calvin
H. Udall, Phoenix, Ariz., George H. Gang-
were, Kansas City, Mo., for defendants.

### MEMORANDUM

CLIFFORD SCOTT GREEN, District
Judge.

This case arises from the transfer of a
student, plaintiff Farley Weiss (Weiss),
from Arizona State University (ASU) to the
University of Pennsylvania (Penn). While
a freshman at ASU during the 1981–82
academic year, Weiss played varsity tennis
and, among junior players, was nationally
ranked 63 by the United States Tennis As-
sociation. A bylaw of the National Collegi-
ate Athletic Association requires a transfer
student such as Weiss to be in residence for
one year before he may play varsity tennis
for the school to which he transferred.[1]

---

1. The NCAA rules govern eligibility for post-
season competition. Bylaw 5–1–(j)–(7) pro-
vides in pertinent part:

   A transfer student from a four-year institu-
   tion shall not be eligible for any NCAA cham-
   pionship until the student has fulfilled a resi-
   dency requirement of one full academic year
   (two full semesters or three full quarters),
   and one full calendar year has elapsed from

the first regular registration and attendance
date at the certifying ... institution.

Bylaw 5–1–(m)–(10) exempts a transfer student
from the one-year residency requirement where
the student was not recruited by the institution
to which he or she transferred, the student did
not receive athletically related financial aid,
and the student did not practice or compete in
intercollegiate athletics prior to transfer.

Thus, Weiss was ineligible to compete on Penn's tennis team during the 1982–83 academic year. For one like Weiss who aspires to play professional tennis, ineligibility to play collegiate tennis for a year is a critical loss.[2]

Weiss filed a complaint against the NCAA in the federal district of Arizona, challenging the legality of the transfer rule. Virtually all of the evidence produced in this case was submitted in the first instance to the court in Arizona. At the conclusion of the hearing on plaintiff's motion for a preliminary injunction, Judge Muecke stated,

> I ... don't feel I should issue an injunction because under the case law ... I don't find any basis for there being strong support for the Court intervening in stopping this one-year delay plus the speculation as to whether, if the plaintiff were able to play, whether or not he might actually either get into varsity or be accepted for championship or post-season plays or actually go abroad and things of that kind.

Transcript, April 1, 1983 at 130–31. Thereafter, Judge Muecke denied plaintiff's prayer for injunctive relief and ordered that the case be transferred to this district.

While the case was being transferred, Weiss brought suit in this district against the Eastern Collegiate Athletic Conference (ECAC), alleging that the transfer rule violated the federal antitrust laws, as well as the equal protection and due process clauses, which apply to the states by virtue of the fourteenth amendment to the Constitution. The ECAC consented to the entry of a temporary restraining order prohibiting it from applying the transfer rule to Weiss or Penn pending a hearing on Weiss' motion for a preliminary injunction. On April 7, 1983, I entered said order enabling plaintiff to play varsity tennis at Penn until the hearing was held. Thereafter, the file in

*Weiss v. NCAA* arrived and was randomly assigned to another judge in this district. Pursuant to Local Civil Rule 3(c)(2), by order of the Chief Judge, *Weiss v. NCAA* was reassigned to my calendar. On April 20, 1983, I consolidated *Weiss v. ECAC* with *Weiss v. NCAA,* convened an evidentiary hearing, heard the parties' arguments regarding plaintiff's motion for a preliminary injunction, and extended the restraining order against the ECAC until a decision on plaintiff's motion was rendered.

■ Now before the court is plaintiff's motion for a preliminary injunction prohibiting the ECAC and the NCAA from applying the transfer rule to him. Before beginning to discuss the merits of the motion, the court acknowledges that, as *Stevenson v. Four Winds Travel, Inc.,* 462 F.2d 899 (5th Cir.1972), correctly states, "[t]he rule in most of the national courts ... is that where a judge of a United States District Court ... renders a decision and makes a judicial order in such case, and thereafter the case is transferred to the calendar of another judge of such District Court, the latter judge should respect and not overrule such decision and order." *Id.* at 904–05, citing *Price v. Greenway,* 167 F.2d 196, 199 (3d Cir.1948). There are exceptions to this general rule. For example, in *Kirby v. P.R. Mallory & Co.,* 489 F.2d 904, 913 (7th Cir. 1973), reconsideration was permitted where the subsequent motion revealed that, as a matter of law, a necessary element was missing from plaintiff's case. Also, as both *Kirby* and *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858 (5th Cir.1970), demonstrate, in the exercise of sound discretion, this court may consider a second motion. After reading the transcript of the proceedings before Judge Muecke, I exercise that discretion in favor of considering this motion because: defendant ECAC was not a party to the case before Judge Muecke; a formal, signed

---

The rules of the Eastern Collegiate Athletic Conference (ECAC), which govern eligibility for competition during the season, contain a similar residence requirement for transfer students.

2. Plaintiff concedes that he would be eligible to play collegiate tennis for four years if he spent four years at Penn, but asserts he should be able to have a "full" collegiate athletic career without remaining at Penn longer than is required to obtain his degree.

judicial order was not rendered by Judge Muecke;[3] and language Judge Muecke used during the proceeding shows that he did not intend the ruling concerning the NCAA to be a binding decision on the issue of preliminary relief.[4]

When deciding whether to issue a preliminary injunction,

the court must consider and weigh whether:

(1) The plaintiff will suffer irreparable harm if relief is not granted.

(2) The defendant will be harmed if relief is granted.

(3) The public generally will be harmed if relief is granted.

(4) The plaintiff is likely to prevail on the merits of his claim.

*Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 600–01 (3d Cir.1979). Although I gave counsel an opportunity to amplify it, the factual record in the instant matter remains sparse. The evidence does not disclose that plaintiff will be irreparably harmed if relief is not granted; nor does it reveal that defendant will suffer significant harm if relief is granted. There is no evidence that the general public will be affected by any decision rendered. After considering the transcript of the proceedings held in Arizona, the record, the parties' briefs and their arguments, I conclude plaintiff has not established that he is likely to prevail on the merits of his claim. Having weighed the aforementioned factors, I find that the scale tips heavily in defendants' favor. Accordingly, I must deny plaintiff's motion for a preliminary injunction.

■ The court first considers whether irreparable harm might inure to the plaintiff or defendant, respectively, if relief were denied or granted. Pursuant to the entry and extension of the temporary restraining order, plaintiff has been able to participate in ECAC competition. Penn's varsity tennis team finished fourth in the Ivy League. There is no evidence that Penn is likely to be one of the sixteen teams which will be invited to participate in the post-season NCAA competition. Nor is there any evidence that plaintiff is likely to be one of the sixty four individuals selected to play in singles competition. In sum, there is no evidence that plaintiff would probably be selected to play in the upcoming NCAA tournament even if injunctive relief were granted. Plaintiff will have been in residence at Penn for a full year when the 1983–84 academic year begins and therefore will be eligible to represent Penn in tennis competition next fall. However, this summer, Penn might play post-season tennis matches in England and would include plaintiff in the tournament team if his participation would not violate ECAC bylaws. ECAC bylaws prohibit Penn from paying expenses incurred by an ineligible student athlete.[5] The trip would be sponsored and paid for by Penn, and plaintiff's participation at Penn's expense would contravene these bylaws. From the record, I conclude that being unable to participate in the potential matches in England at Penn's ex-

---

**3.** The judge's decision is reported on the minutes entered pursuant to the hearing.

**4.** For example, the court stated, "The Court would transfer this case under 28 U.S.C. § 1404 to the Eastern District of Pennsylvania for further proceedings in this matter including any applications that might be made for a temporary restraining order or permanent injunction." Transcript, April 1, 1983 at 175.

**5.** Article Three, § 1(a)(1) of the ECAC bylaws provides, "[a]n individual shall not be eligible for participation in an intercollegiate sport if ... he takes or has taken pay, or has accepted the promise of pay, in any form, for participation in that sport...." According to subsec-

tion (g)(2)(iii), practices which constitute "pay" for purposes of intercollegiate activities, and which are prohibited, include "payment of excessive or improper expense allowances, including, but not limited to, payment of ... expenses incurred by a student-athlete competing in an event which occurs at a time when he is not ... eligible to represent his institution...."

Defendants' counsel has informed the court the aforementioned bylaws would be violated, not by plaintiff's participation on the trip, but by the fact that his participation would be paid for by Penn.

pense is the maximum harm plaintiff will suffer due to the denial of injunctive relief.[6]

The record is sparse as to the type of harm defendant will suffer if relief is granted. There is no suggestion that, if injunctive relief were granted, defendants would be required to do more than allow plaintiff to be considered eligible for NCAA post-season competition and the potential trip to England. Counsel for defendant argues that granting the relief sought by plaintiff would encourage student athletes to launch wholesale challenges against ECAC and NCAA regulations.[7] However, the expense or inconvenience suffered by defendants due to these challenges is not the type of harm that would justify deny-

ing plaintiff relief if he otherwise were entitled.

Plaintiff has not offered evidence which establishes that he will suffer irreparable harm if relief is not granted. Accordingly, I must deny his prayer for injunctive relief. Although I need not consider whether he is likely to prevail on the merits of his claims, it is appropriate to note that plaintiff has not offered the court evidence to permit me to find that he is likely to prevail. Difficult factual and legal questions, which cannot be decided on such a sparse record, are involved in the case *sub judice: e.g.,* whether the NCAA and ECAC should be deemed state actors;[8] whether a

---

**6.** According to counsel for defendants, it appears the ECAC rules might not prohibit plaintiff from participating in the matches if he pays his own expenses. As counsel states, the ECAC eligibility committee can address this question.

There is no evidence to suggest that plaintiff cannot afford to pay his own expenses if Penn allows him to participate in the matches in England. The ultimate decision as to whether plaintiff may play in these matches might rest with Penn. Because plaintiff has not joined Penn as a party, I am not called upon to direct Penn's decision in any way. Should Penn allow plaintiff to participate and should plaintiff prevail at trial, the damage of paying this expense could be remedied by a monetary judgment.

Given the speculative nature of plaintiff's claim of harm and the availability of a damage remedy, injunctive relief is not required. *See City of Los Angeles v. Lyons,* —— U.S. ——, ——, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 at 690 (1983), where the Court stated,

The equitable remedy [of injunctive relief] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a "likelihood of substantial and immediate irreparable injury" ... The speculative nature of [plaintiff's] claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.

**7.** The plethora of cases and literature concerning the constitutionality of regulations promulgated by student athletic associations arguably supports defendants' position. *See, e.g., Howard Univ. v. NCAA,* 510 F.2d 213 (D.C.Cir. 1975); *Bell v. Michigan State Univ.,* No. 76–408 (W.D.Mich. Sept. 10, 1976); *Buckton v. NCAA,* 366 F.Supp. 1152 (D.Mass.1973); *Sturrup v. Mahan,* 261 Ind. 463, 305 N.E.2d 877 (1974);

Koch, *A Troubled Cartel:* The NCAA, 38 Law and Contemp. Probs. 135 (1973); Comment, *Judicial Review of Disputes between Athletes and the National Collegiate Athletic Association,* 24 Stan.L.Rev. 903 (1972); Comment, *A Student Athlete's Interest in Eligibility: Its Context and Constitutional Dimensions,* 10 Conn.L.Rev. 318 (1978).

**8.** For purposes of this motion only, defendant conceded that the conduct of the NCAA is state action. Defendant made no such concession, however, with regard to the ECAC. Moreover, plaintiff points to no legal precedent in which the activity of the ECAC has been deemed state action, and he has not provided the court with sufficient information from which the court can make a determination about the constituency or activity of the ECAC. Nothing of record merits a conclusion that the rulemaking functions of defendants are state functions, that a symbiotic relationship exists between defendants and a state, or that the state is involved in defendants' conduct. *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Jackson v. Metropolitan Edison,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

In his oral argument, counsel for plaintiff urged the court to take judicial notice of various contexts in other litigation wherein conduct of the NCAA has been deemed state action. These cases may be inapposite inasmuch as the rules there at issue created unconstitutional alienage classifications. They also differ from the one at bar in that, by plaintiff's choice, Penn, the institution which might be subject to sanction by defendants for allowing an ineligible student to play or from which plaintiff might seek damages for applying defendants' rules, is not a party to this litigation. For the cases relied upon by plaintiff, see *Howard Univ. v. NCAA,* 510 F.2d 213 (D.C.Cir.1975)

classification, which renders those who participated in intercollegiate athletics prior to transfer ineligible to compete at the institution to which he transferred for one year, is valid; whether fundamental rights are adversely affected by the transfer rules;[9] whether competing in intercollegiate sports is a privilege or a valuable property right which should be afforded constitutional protection;[10] whether intercollegiate tennis is in commerce, affects commerce, or has a commercial impact.[11]

Plaintiff's motion for a preliminary injunction will be denied.

(pervasive influence of state-supported universities in the NCAA requires finding of state action; foreign student rule is invalid because it creates unconstitutional alienage classification); *Buckton v. NCAA,* 366 F.Supp. 1152 (D.Mass.1973) (in supervising and policing most intercollegiate athletics nationwide, NCAA performs a public function, sovereign in nature, which subjects it to constitutional scrutiny; regulations which classify resident aliens and American citizens differently are inherently suspect).

**9.** The degree of scrutiny to which the court should place defendants' rules when reviewing plaintiff's due process and equal protection claims depends on whether the rights upon which the rules allegedly impinge are fundamental. *See Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) (due process); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973) (equal protection).

**10.** After considering the degree to which intercollegiate athletics are a stepping stone to participation in professional sports, a few federal courts concluded the right to compete should be afforded constitutional protection. *University of Minnesota v. NCAA,* 422 F.Supp. 1158 (D.Minn.1976), *rev'd on other grounds,* 560 F.2d 352 (8th Cir.1977) (intercollegiate basketball); *Hunt v. NCAA,* No. 76–370 (W.D.Mich. Sept. 10, 1976) (intercollegiate football). Many more courts have determined that intercollegi-

ate athletic competition is a privilege, not a right. *E.g., Parish v. NCAA,* 506 F.2d 1028, 1034 (5th Cir.1975), *overruled on other grounds, Gresham Park Community Organization v. Howell,* 652 F.2d 1227 (5th Cir.1981); *Albach v. Odle,* 531 F.2d 983, 984–85 (10th Cir.1976); *Williams v. Hamilton,* 497 F.Supp. 641, 645 (D.N.H.1980). The court notes that the Third Circuit has not considered this issue. The court also notes that the factual record is barren of evidence concerning the percentage of intercollegiate tennis players who reach professional ranks; the extent to which a collegiate career is a prerequisite to entry into the professional tennis ranks; the similarities, in terms of media exposure, commercial impact, etc., between varsity tennis, basketball and football.

**11.** One jurisdictional prerequisite to an antitrust claim is that the defendant combination be in commerce, affect commerce, or have commercial objectives. *McLain v. Real Estate Board,* 444 U.S. 232, 241, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980); *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741 (1959); *Apex Hosiery v. Leader,* 310 U.S. 469, 492–93, 60 S.Ct. 982, 992, 84 L.Ed. 1311 (1940). Plaintiff has not provided the court with any information which remotely suggests that the intercollegiate tennis competition which defendants regulate meets this requirement.